B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) RECEIVED FEB 18 2011 CLERK U.S. BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA BY _____ Deputy Clerk |
|---|---|
| **PLAINTIFFS** <br> R CITY, INC. | **DEFENDANTS** <br> WEENEEZ, LLC |
| ATTORNEYS (Firm Name, Address, and Telephone No.) <br> THOMAS E. MOORE III, THE MOORE LAW TEAM <br> 228 HAMILTON AVE 3d FL <br> PALO ALTO CA 94301 (650)798-5354 | ATTORNEYS (If Known) <br> IAN LANDSBERG, LANDSBERG & ASSOC. APC <br> 16030 VENTURA BLVD STE 470 <br> ENCINO CA 91436 (818)705-2777 |
| PARTY (Check One Box Only) <br> ☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin <br> ☒ Creditor  ☐ Other <br> ☐ Trustee | PARTY (Check One Box Only) <br> ☒ Debtor  ☐ U.S. Trustee/Bankruptcy Admin <br> ☐ Creditor  ☐ Other <br> ☐ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
DEBT IS NON-DISCHARGEABLE BY REASON OF DEBTOR'S PARTICIPATION IN A CONSPIRACY THAT CONVERTED PLAINTIFF'S BUSINESS AND PROPERTY FOR ITS OWN USE
11 U.S.C. § 523(a)(2) - FRAUD; 11 USC § 523(a)(4) CONVERSION/LARCENY;
11 USC. § 523(a)(6) - INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONSHIP

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒ Check if a jury trial is demanded in complaint | Demand $ 4,000,000 |
| Other Relief Sought | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR WEENEEZ, LLC | | BANKRUPTCY CASE NO. 2:10-bk-58946 ER | |
| DISTRICT IN WHICH CASE IS PENDING CENTRAL DISTRICT | | DIVISION OFFICE LOS ANGELES | NAME OF JUDGE ERNEST M. ROBLES |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | | |
| DATE 2/17/11 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF) NICOLE V. ECONOMOU CASB #154485 THE MOORE LAW TEAM FOR PLAINTIFF R CITY, INC. | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| NAME OF DEBTOR Weeneez, LLC | BANKRUPTCY CASE NO. 2:10-bk-58946 ER |
| DISTRICT IN WHICH CASE IS PENDING Central District | DIVISION OFFICE Los Angeles | NAME OF JUDGE Ernest M. Robles |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

[signature]

| DATE 2/17/11 | PRINT NAME OF ATTORNEY (OR PLAINTIFF) Nicky Tiamacklu, Esq. #194925 The Moore Law Firm for Plaintiff R City, Inc. |
|---|---|

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

1  THOMAS E. MOORE III (SBN 115107)
   tmoore@moorelawteam.com
2  NICOLE V. ECONOMOU (SBN 154485)
   neconomou@moorelawteam.com
3  THE MOORE LAW TEAM
   228 Hamilton Avenue. Third Floor
4  Palo Alto, CA 94301
   Telephone: (650) 798-5354
5  Facsimile: (415) 798-5001

6  Counsel for Plaintiff and Creditor
   R CITY, INC.

FILED
FEB 18 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

UNITED STATES BANKRUPTCY COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

IN RE:                          )  Case No. 2:10-bk-58946-ER
                                )
WEENEEZ L.L.C.                  )  Chapter 7
                                )
                                )  Adv. Proc. No.
   Debtor.                      )
                                )  **COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(A)(2), (4) AND (6)**
                                )
                                )  [JURY TRIAL REQUESTED]

BY FAX

R CITY, INC., a California corporation,  )
                                )
   Plaintiff,                   )
                                )
vs.                             )
                                )
WEENEEZ L.L.C,                  )
                                )
   Defendant.                   )

- 1 -

COMPLAINT TO DETERMINE
NON-DISCHARGEABILITY OF DEBT
CASE NO. 2:10-BK-58946-ER

Plaintiff and creditor R City, Inc. ("R City") brings this action against defendant and debtor Weeneez L.L.C. ("Weeneez") to determine the non-dischargeability of its debt to R City pursuant to 11 U.S.C. Section 523 (a)(2), (4) and (6) and in support thereof alleges as follows:

## I. INTRODUCTION

1. R City is a California corporation that until July 3, 2010 was doing business in downtown Los Angeles as a restaurant/wine bar under the name "The Must."

2. On July 3, 2010, the operation of The Must came to a surprise ending as the result of a months-long scheme to steal The Must's profitable business. Weeneez' two controlling members and principals, Julie Rico Bastarache ("Rico" the debtor in Central District of California bankruptcy case number 2:10-bk-58962 PC) and Sid Alexander Carter ("Carter," the debtor in District of Oregon bankruptcy case number 10-40837-elp13), were the principal parties to the scheme (collectively, Rico and Carter are hereinafter described as "Weeneez' Principals").

3. Weeneez was the primary tenant of a portion of real property located at the corner of 118 West 5th Street and 500 South Spring Street in downtown Los Angeles, and Weeneez Principals sublet a portion of that premises to R City for the purpose of establishing and operating The Must. After opening in December 2008, The Must grew in popularity and profitability to the point where it had eighteen employees and monthly revenues exceeding $100,000. Weeneez own cafe, operated under the name "Weeneez" in another part of the premises, did a small fraction of that level of business.

4. In late 2009, Weeneez' Principals set a plan in motion by secretly advertising both Weeneez and The Must for sale. In early 2010, they located a buyer, one David A. McGrath ("McGrath"), who paid Weeneez $250,000 for a 51 percent ownership interest in both business, with Rico and Carter owning the remaining 49 percent. Then, in the dead of night over the Fourth of July weekend of 2010, McGrath, Rico and Carter stole into The Must, taking possession of it and all its property. As a result, R City lost its quarter-million dollar investment in the restaurant,

- 2 -

its million dollar annual revenue, its clientele, and the livelihood of its principals and employees.

## II. JURISDICTION AND VENUE

5. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 157 and 1332 and 11 U.S.C. § 523. This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(6) and a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)(I) and (O).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## III. PARTIES

7. Plaintiff R City is, and at all times herein mentioned was, a California corporation operating in this county. Until July 3, 2010, R City operated a wine bar called "The Must" at 118 West 5th Street, Los Angeles (the "Premises").

8. Debtor and defendant Weeneez is a California limited liability company with its principal place of business at 510 S. Spring Street, Los Angeles, CA 90013.

## IV. STATEMENT OF FACTS

9. R City was incorporated in July 2008, and the founders started looking for a location at which to operate a wine bar. The Premises proved to be just such a location. The main tenant was Weeneez. Weeneez had more space than it could use, so it made sense for R City to sublet a portion of the Premises from Weeneez.

10. R City gained its right of possession of the Premises by means of an idiosyncratic "Agreement" which R City and Weeneez entered into on or about November 8, 2008. Under the terms of the Agreement, R City agreed to pay a "Monthly Working Capital Payment," i.e., rent, of $4,000 per month, to Weeneez for the Premises. The term of the Agreement was contemporaneous with the master lease agreement that Weeneez had entered into with the landlord, Security Building Loft Partners. That master lease was not due to terminate until January 2012 and could be extended a further five years to January 2017.

11. Certain aspects of the Agreement were abundantly clear: First, the Agreement did not form any sort of partnership or other joint venture between Weeneez and R City. Section

- 3 -

13.13 expressly states: "The parties to this Agreement are independent contractors. There is no relationship of agency, partnership, joint venture, employment, or franchise between the parties. Neither party has the authority to bind the other or to incur any obligation on behalf of the other." Second, the Agreement specified that R City's personal property was unambiguously its property and would remain so upon termination of the Agreement. Section 11.9 of the Agreement states: "Upon termination or expiration of this Agreement, [R City] may retain title to any furniture, fixtures, and equipment that were acquired by [R City] during the term of this Agreement."

12. In reliance on the Agreement and the lease term, R City began construction on improvements to the premises in order to open its wine bar. It invested over $250,000 in those improvements, and R City opened The Must in December 2008. It became a popular place in the area.

13. In or about November 2009, R City became aware that Weeneez' Principals were seeking to sell not only Weeneez' own operation to prospective purchasers but The Must as well. R City protested, and Weeneez' Principals appeared to suspend its sales efforts for a period of time. In April 2010 and after R City initiated an arbitration against Weeneez, R City discovered an on-line advertisement by which Weeneez' Principals again appeared to be trying to sell The Must. The advertisement expressly stated that any potential buyers should not contact employees of The Must. Again, R City protested, and the advertisement appeared to be removed.

14. Unbeknownst to any of the principals or employees of The Must, in the early months of 2010, Weeneez' Principals had been in negotiations with McGrath whereby McGrath and/or his agents would purchase substantially all of the assets of the business operated by Weeneez at the Premises, including the assets of The Must. In furtherance of the sale of the Weeneez business, Weeneez' Principals and McGrath contemplated that Weeneez Principals would obtain a termination of the existing master lease between Weeneez and the landlord so that McGrath could obtain a new lease at the premises and gain a fraudulent possessory right over the entire Premises, including the portion occupied by R City.

15. Also unbeknownst to any of the principals or employees of The Must, the landlord

- 4 -

and others agreed to participate with Weeneez in terminating Weeneez' lease, but only on the condition that Weeneez would indemnify the landlord against any action brought against it by the principals of The Must.

16. Pursuant to the negotiations described above, on or about June 30, 2010, the landlord and McGrath entered into a new lease for the space that was still innocently occupied by The Must.

17. On July 1, 2010, the landlord and Weeneez entered into a Lease Termination Agreement. Under the terms of the Termination Agreement, Weeneez agreed to indemnify the landlord against potential claims and damages that may be suffered as a result of the termination of The Must's subtenancy under the former lease held by Weeneez. No form of notice was provided to R City by any of the individuals or entities with knowledge that R City would be damaged by the lease termination. R City continued to operate The Must on the understanding that over a year and a half remained in the term of the original master lease and the Agreement it had with Weeneez.

18. R City performed each and every obligation on its part under the Agreement. On June 30, 2010, R City paid its rent as usual in the amount of $4,120. The check was left on Rico's desk. She cashed the check on or about July 1 and kept the money.

19. On Friday, July 2, the day before the July 4 holiday weekend, R City operated The Must as usual. At that time, R City had various personal property within the Premises such as inventory in the form of wine and beer, chairs, glassware, refrigerators, various equipment and an office computer (the "Movable Personal Property") as wells as booths, lights, cabinets, tables and similar equipment (the "Furnishings"). The Must had eighteen employees.

20. At 2:00 a.m. on Saturday morning, the employees of The Must locked the doors and left for the night. At about 2:45 a.m., at least one white moving truck pulled up outside The Must and the movers within it systematically removed all of the Movable Personal Property from inside. Weeneez' Principals and McGrath were present to supervise the move. They also covered the windows of The Must with brown paper, changed the locks and padlocked the doors. The

- 5 -

1  Furnishings remained inside.

2  21.  Weeneez' Principals and McGrath posted three notices on the windows. Two of the notices purported to terminate the Agreement and fraudulently indicated that R City would have an opportunity to remove its own possessions – even though the possessions had already been removed. The third notice sought to solicit The Must's employees to work at the future restaurant/bar that was to be opened at the Premises.

22.  Weeneez Principals and McGrath put the Moveable Personal Property in a storage unit. Rico did not surrender the keys to the storage unit until July 8 and then did not permit R City to repossess the Moveable Personal Property until July 14. The Moveable Personal Property was damaged by the move and by the heat within the storage unit.

23.  As of the date of this Complaint, McGrath is in possession of the Premises and continue to hold the Furnishings.

## V. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

(11 U.S.C. § 523(a)(2) – Fraud)

24.  R City realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 23 above.

25.  As a member and principal of Weeneez and one of the signatories of the Agreement, Weeneez' Principals knew that R City owned The Must, that R City's expectation was that it had secured the Premises through January 2012 if not January 2017 and that R City was the rightful owner of all of the personal property located within the Premises. Weeneez' Principals also had a duty to disclose any material changes that might affect R City's peaceful habitation of the Premises.

26.  By word and deed, Weeneez' Principals falsely represented to R City that she did not claim an ownership interest in The Must, that she had withdrawn the offer to sell it to a third party and that R City could and should pay rent for the month of July 2010. Weeneez' Principals also fraudulently concealed the fact that they had sold The Must to McGrath, that they had

- 6 -

participated in scheme by which the master lease would be terminated, that they intended to lock R City out of the Premises and that they intended to take over R City's business and steal its customers and employees for their own benefit as well as the benefit of McGrath.

27. R City justifiably relied on Weeneez' Principals' false statements, misrepresentations and omissions. Moreover, Weeneez' Principals' false statements and other fraudulent conduct proximately caused the losses suffered by R City and its employees.

28. Weeneez obtained money and property by false pretenses, false representations, omissions and actual fraud, and is therefore not entitled to a discharge of the debt owed to R City, the amount of which is to be determined at trial but is estimated to be approximately $4 million.

29. In obtaining money and property by false pretenses, false representations, omissions and actual fraud, Weeneez' Principals' and McGrath's conduct was willful and was intended to cause injury to R City in that Weeneez Principals and McGrath closed down R City's business secretly, at night over a holiday weekend with full knowledge of the impact on R City's business and the welfare of its principals and employees. R City is therefore entitled to an award of exemplary damages against Weeneez for its role in the scheme.

WHEREFORE, R City prays for judgment as set forth below.

## SECOND CLAIM FOR RELIEF

## (11 U.S.C. § 523(a)(4) – Conversion/Larceny)

30. R City realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 23 above.

31. At all times herein mentioned, and in particular on or about July 3, 2010, R City was, and still is, the owner of the Moveable Personal Property, the Furnishings and other kitchen equipment and inventory that remain within The Must's former Premises.

32. On or about July 2, 2010, the property described above had a value of over $100,000.

33. On or about July 3, 2010, Weeneez' Principals and McGrath wrongfully took the foregoing personal property from R City's possession and converted the property to their own use.

- 7 -

34.  As a proximate result of Weeneez' Principals' and McGrath's conversion/larceny, R City has suffered and will continue to suffer damages for loss of use of its property and disruption to its business in an amount to be determined at trial. R City estimates that the fair rental value of its personal property was $400 for the ten days before the Moveable Personal Property was returned and that the fair rental value of the Furnishings is $1,300 per month.

35.  Between the time of Weeneez' Principals' and McGrath's larceny/conversion of the above-mentioned property to their own use and the filing of this action R City expended $4,667 in retrieving the Moveable Personal Property and will spend further sums to store that property appropriately.

36.  R City is informed and believes, and on that basis alleges, that Weeneez' Principals and McGrath and/or their agents have physically damaged the personal property described above. R City has suffered damages and will suffer damages in an amount to be proven at trial for repair costs or irreparable property damage to the personal property.

37.  Weeneez' larceny/conversion of R City's personal property is not entitled to a discharge of the debt owed to R City, the amount of which is to be determined at trial but is estimated to be approximately $150,000.

38.  In taking, wrongfully acquiring, possessing, and detaining the property described above, Weeneez' Principals' and McGrath's conduct was willful and was intended to cause injury to R City in that Weeneez' Principals and McGrath took R City's property secretly, at night over a holiday weekend with full knowledge of the impact that such removal would have on R City's business and the welfare of its principals and employees. R City is therefore entitled to an award of exemplary damages against Weeneez for its role in the scheme.

39.  Pursuant to Penal Code Section 496, R City is entitled to an award of three times the amount of actual damages, costs of suit and reasonable attorneys' fees.

WHEREFORE, R City prays for judgment as set forth below.

///

### THIRD CLAIM FOR RELIEF

### (11 U.S.C. § 523(a)(6) – Intentional Interference with Economic Relationship)

40. R City realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 39 above.

41. From December 2009 to July 2010, R City established an economic relationship in the form of the good will of its customers based, in part, on its name, service, quality of its products, reputation and location. R City also established employment agreements with its eighteen employees, whereby the employees contributed to building that good will.

42. Weeneez' Principals and McGrath, and each of them, knew of these relationships with The Must's customers and employees, and the Weeneez' Principals and McGrath coveted them for themselves.

43. On or about July 3, 2010, Weeneez' Principals and McGrath, and each of them, materially participated in a plan that interfered with R City's economic relationships with its customers and employees by: (i) keeping the termination of Weeneez' lease and the change of tenancy secret from R City; (ii) secretly removing all of the Moveable Personal Property to a storage facility; (iii) changing the locks on the Premises thereby depriving R City of its rightful possession of the Premises; (iv) converting the Furnishings and part of R City's inventory; (v) posting notices after the removal of R City's personal possessions that fraudulently indicated that R City would have an opportunity to remove its own possessions; (vi) posting a solicitation of R City's customers and employees; (vii) failing to protect R City's inventory of fine wines adequately so that they roasted within a non-air conditioned storage facility; and (viii) physically damaging R City's property so that much of it is in need of repair.

44. The foregoing acts were wrongful, in that they constituted fraud, wrongful dispossession of R City from the Premises, conversion and physical damage to property.

45. The foregoing acts actually disrupted R City's economic relationships in that R City

- 9 -

1  has been unable to conduct any business at all since July 3, 2010, and will not be able to conduct
2  business for the foreseeable future.
3      46.    As a proximate result of the aforementioned acts, R City has suffered damages in an
4  amount to be determined at trial. Such damages would include damages for the disruption to R
5  City's business, wrongful dispossession of the Premises, dispossession of its personal property,
6  damage to its personal property, amounts expended in its efforts to locate a new location and any
7  lasting diminution to the value of its business.
8      47.    Weeneez' conduct was willful and malicious and is therefore not entitled to a
9  discharge of the debt owed to R City, the amount of which is to be determined at trial but is
10  estimated to be approximately $4 million.
11     48.    In obtaining money and property by means of fraud, wrongful dispossession of R
12  City from the Premises, conversion and physical damage to property, Weeneez' Principals and
13  McGrath's conduct was willful and was intended to cause injury to R City in that Weeneez'
14  Principals and McGrath closed down R City's business secretly, at night over a holiday weekend
15  with full knowledge of the impact on R City's business and the welfare of its principals and
16  employees. R City is therefore entitled to an award of exemplary damages against Weeneez for its
17  role in the scheme.

## PRAYER

19  WHEREFORE, R City respectfully requests that the Court enter judgment against Weeneez
20  as follows:
21      1. Declaring that Weeneez' indebtedness to R City, in an amount to be determined, is a non-
22  dischargeable debt pursuant to 11 U.S.C. § 523(a)(2) and/or § 523(a)(4) and/or § 523(a)(6);
23      2. Granting a non-dischargeable judgment in favor of R City against Weeneez, in an amount
24  to be determined, including without limitation, prejudgment and post-judgment interest as provided
25  by law, punitive damages, reasonable attorneys' fees, costs and expenses; and
26      3. Granting R City any other and further relief to which it may be entitled.

## JURY DEMAND

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

DATED: February 17, 2010

Respectfully submitted,

_____
Nicole V. Economou
THE MOORE LAW TEAM

THE MOORE LAW TEAM
THOMAS E. MOORE III (SBN 115107)
NICOLE V. ECONOMOU (SBN 154485)
228 Hamilton Avenue, Third Floor
Palo Alto, CA 94301
Telephone: (650) 798-5354
Facsimile: (415) 798-5001

COUNSEL FOR R CITY, INC.

- 11 -

COMPLAINT TO DETERMINE
NON-DISCHARGEABILITY OF DEBT
CASE NO. 2:10-BK-58946-ER